IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| 3 B Farms; 3 Bale Farms Inc.; 4 F Farms; 5M Farms Inc.; 54 Farm Supply LLC; A & F Kellum LLC; AK Rainwater Farms; Charlene Alldredge; Ladora Aufill; Jealeta Baird; Barker Farm; Bartels Farms LLC; Ann Bean; Survivors TR UA Donald R & MaryJane Bean Living Tr; Beedy Farms; Judy Beedy; Randy Bertrand; Best Texas Farm & Ranch LLC; Blowing Dust Farms Inc.; David Boedeker; Boedeker Family Partnership; Brandes Farms LLC; Charlotte Brock; Claude Brown; Perry Brunson; Burch Farms Inc.; Keith Burch; Kirby Burch; Kenneth Burnett; Neal Burnett; Neal Vondal G Burnett & Donna K Burnett Partnership; Vondal Tyler Burnett; Bybee Farms; Paul Cabello; Carmat Farms; Landon Carthel; Theodore Carthel; Theodore Frances Carthel, Estate Trust 1; Theodore Frances Carthel Estate Trust 2; C Bar D Farms Partnership; Luis Cervera; Chaucersons Series A LLC; Circle C Farms Partnership; Circle Z Farms; Clarity Investments LLC; Coe-Fielding Family Limited Partnership; Cole Land & Cattle LLC; Larry Comer; Connie Bearden Farms Partnership; Elsa Cooper; Trent Cowart; D & J Puckett Farms Inc.; Dart Carthel Farms JV; Aaron Dietrich; Jo Dietrich; Bill Dolle; Double T & B Land LLC; Lynn Dunn; Dodd Duvall; Eagle Wing Farms; Elam Family Farms; Ross & Melissa Estes; Ross & Payton Estes Farms; Finck and Finck; Jan Fleming; Ford Family Farms; Ann Foster; Foster Brothers Farms; Gary & Justin Foster Farms; Gary Foster; Jody Foster; David Foster; Will Foster; Garland Francis Trust; Jace Francis; G&M Farms; Brian Gandy; David Gandy; Vance Gandy; Linda Gilbreath; Bobby Gleason; Jerry Gleason; GLM Farms; Barbara Green; Ladonna Gueswel; Randy Hargrove; Jo Harper; Michael Haseloff; Hickerson Emery Inc.; Gail Hickerson; Rebecca Hicks; GI Hight, Jr.; Dudley M. Hodgkins Exempt Trust; John T. Hodgkins Exempt Trust; Austin Hoglan; Lance Holt; Charles Huffman; Molly Huffman Estate Trust; Craig Hunt; D K Jackson Estate Trust; Jerry Johnson; Vikee Johnson; Joyful Rows LLC; KBW Farms Inc.; Joshua | Civil Action No. _____ |

1

Keeney; H R King Farm, LTD; Jay Lackey; Kaden Lackey; Landon Lackey; Lazy Four Farms, Inc.; Ralph Lee; M & C Farms Inc.; M&G Mathis Partnership; D'Lee Marble; Keith Marble; Keith D. Marble; June Marble Wells Estate; Carolyn Marble; Nancy Marble; Marble Children Trust; Sharon Marshall; Barbara Mathis; Barbara Mathis Carthel Estate Trust 1; Barbara Carthel Mathis Estate Trust 2; Barbara Mathis & Warren D Mathis Estate Trust Part; Warren D Mathis Estate Trust; Alvin May; Dale McDonald; Gail McEachern; Jimmy Mcgaugh; Donald Mcguire; Ross McKillip; MGM Farms; Mid Plains Inc.; Caleb Miller; Carson Miller; Jerry Miller; Kurt Miller; Martha Miller; Mike Miller; Alan Monroe Farms LLC; Lanelle Montague Revocable Living Trust; Kelly Munson; Coy Myrick; JD Myrick; OD Moore Farms Inc.; OD Moore Trust; Peggy Ogerly; Steve & Cindy Olson JV; Dean Palmer; Don Palmer; Eric Patton; James Patton; J E Patton; Mark Patton; Phillips Farms Joint Venture; Keith Phillips; Tyler Phillips; JC Pigg; Kay Clements Pritchard Trust; Donald Puckett; John Quebe; Wynona Quebe; R & J Farms, Inc.; R2V Farms; Ann Race; Randy Race; Gayle Reay; Rex Redies; Rexrode Family Trust; Heath Rexrode; Joe Rexrode; Liz Rice; Anna Robertson; Rocking C Farms, Inc.; Rockwater Farms Inc.; John Ross; Tucker Ross; RSW Farms, Inc.; Casey Russell; Donette Sabins; Sandlot Farms; Margaret Saul; Gayle Schacht; Doyle Schulte; Matthew Schwertner; Jerry Seigler; Arnaldo Serrato; Seth Bailey Farms Inc; Sally Shaw; Karan Shomaker; Nathan Sperry; Terry Sperry; Jerry Stair; Stevens Family Trust; Stoerner Bros Farms Inc.; Stoerner Farms; Dan Street; Tony Street; Sunset Farms; Glenn Sutterfield; Jeffrey Sutterfield; Shirley Sutterfield; Brady Tannahill; Eugene Tannahill; Milledge Taylor; Triple B Farms; Jeri Tulley; Kevin Tulley; Norma Vaughan; Jalee Victory; Clay Ware; Gary Weaks; West Plains Farms Wheeler Brothers; Grant Wheeler; Nathan Wheeler; Rusty Whitt; Whitfield Acres Inc.; Lloyd Widener; Dale Wilhelm; Bethany Williams; Wilson Farms; Chase Young; and Ziegler Family Trust,

Plaintiffs,

|   |   |
|---|---|
| v.<br><br>FEDERAL CROP INSURANCE CORPORATION,<br>and RISK MANAGEMENT AGENCY,<br><br>Defendants. |   |

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF**

Plaintiffs, 3 B Farms; 3 Bale Farms Inc.; 4 F Farms; 5M Farms Inc.; 54 Farm Supply LLC; A & F Kellum LLC; AK Rainwater Farms; Charlene Alldredge; Ladora Aufill; Jealeta Baird; Barker Farm; Bartels Farms LLC; Ann Bean; Survivors TR UA Donald R & MaryJane Bean Living Tr; Beedy Farms; Judy Beedy; Randy Bertrand; Best Texas Farm & Ranch LLC; Blowing Dust Farms Inc.; David Boedeker; Boedeker Family Partnership; Brandes Farms LLC; Charlotte Brock; Claude Brown; Perry Brunson; Burch Farms Inc.; Keith Burch; Kirby Burch; Kenneth Burnett; Neal Burnett; Neal Vondal G Burnett & Donna K Burnett Partnership; Vondal Tyler Burnett; Bybee Farms; Paul Cabello; Carmat Farms; Landon Carthel; Theodore Carthel; Theodore Frances Carthel, Estate Trust 1; Theodore Frances Carthel Estate Trust 2; C Bar D Farms Partnership; Luis Cervera; Chaucersons Series A LLC; Circle C Farms Partnership; Circle Z Farms; Clarity Investments LLC; Coe-Fielding Family Limited Partnership; Cole Land & Cattle LLC; Larry Comer; Connie Bearden Farms Partnership; Elsa Cooper; Trent Cowart; D & J Puckett Farms Inc.; Dart Carthel Farms JV; Aaron Dietrich; Jo Dietrich; Bill Dolle; Double T & B Land LLC; Lynn Dunn; Dodd Duvall; Eagle Wing Farms; Elam Family Farms; Ross & Melissa Estes; Ross & Payton Estes Farms; Finck and Finck; Jan Fleming; Ford Family Farms; Ann Foster; Foster Brothers Farms; Gary & Justin Foster Farms; Gary Foster; Jody Foster; David Foster; Will Foster; Garland Francis Trust; Jace Francis; G&M Farms; Brian Gandy; David Gandy; Vance Gandy;

3

Linda Gilbreath; Bobby Gleason; Jerry Gleason; GLM Farms; Barbara Green; Ladonna Gueswel; Randy Hargrove; Jo Harper; Michael Haseloff; Hickerson Emery Inc.; Gail Hickerson; Rebecca Hicks; GI Hight, Jr.; Dudley M. Hodgkins Exempt Trust; John T. Hodgkins Exempt Trust; Austin Hoglan; Lance Holt; Charles Huffman; Molly Huffman Estate Trust; Craig Hunt; D K Jackson Estate Trust; Jerry Johnson; Vikee Johnson; Joyful Rows LLC; KBW Farms Inc.; Joshua Keeney; H R King Farm, LTD; Jay Lackey; Kaden Lackey; Landon Lackey; Lazy Four Farms, Inc.; Ralph Lee; M & C Farms Inc.; M&G Mathis Partnership; D'Lee Marble; Keith Marble; Keith D. Marble; June Marble Wells Estate; Carolyn Marble; Nancy Marble; Marble Children Trust; Sharon Marshall; Barbara Mathis; Barbara Mathis Carthel Estate Trust 1; Barbara Carthel Mathis Estate Trust 2; Barbara Mathis & Warren D Mathis Estate Trust Part; Warren D Mathis Estate Trust; Alvin May; Dale McDonald; Gail McEachern; Jimmy Mcgaugh; Donald Mcguire; Ross McKillip; MGM Farms; Mid Plains Inc.; Caleb Miller; Carson Miller; Jerry Miller; Kurt Miller; Martha Miller; Mike Miller; Alan Monroe Farms LLC; Lanelle Montague Revocable Living Trust; Kelly Munson; Coy Myrick; JD Myrick; OD Moore Farms Inc.; OD Moore Trust; Peggy Ogerly; Steve & Cindy Olson JV; Dean Palmer; Don Palmer; Eric Patton; James Patton; J E Patton; Mark Patton; Phillips Farms Joint Venture; Keith Phillips; Tyler Phillips; JC Pigg; Kay Clements Pritchard Trust; Donald Puckett; John Quebe; Wynona Quebe; R & J Farms, Inc.; R2V Farms; Ann Race; Randy Race; Gayle Reay; Rex Redies; Rexrode Family Trust; Heath Rexrode; Joe Rexrode; Liz Rice; Anna Robertson; Rocking C Farms, Inc.; Rockwater Farms Inc.; John Ross; Tucker Ross; RSW Farms, Inc.; Casey Russell; Donette Sabins; Sandlot Farms; Margaret Saul; Gayle Schacht; Doyle Schulte; Matthew Schwertner; Jerry Seigler; Arnaldo Serrato; Seth Bailey Farms Inc; Sally Shaw; Karan Shomaker; Nathan Sperry; Terry Sperry; Jerry Stair; Stevens Family Trust; Stoerner Bros Farms Inc.; Stoerner Farms; Dan Street; Tony Street; Sunset Farms; Glenn Sutterfield; Jeffrey

Sutterfield; Shirley Sutterfield; Brady Tannahill; Eugene Tannahill; Milledge Taylor; Triple B Farms; Jeri Tulley; Kevin Tulley; Norma Vaughan; Jalee Victory; Clay Ware; Gary Weaks; West Plains Farms Wheeler Brothers; Grant Wheeler; Nathan Wheeler; Rusty Whitt; Whitfield Acres Inc.; Lloyd Widener; Dale Wilhelm; Bethany Williams; Wilson Farms; Chase Young; and Ziegler Family Trust (collectively, "**Plaintiffs**"), state as follows for their Complaint for Judicial Review and Declaratory Relief against Defendants, the Federal Crop Insurance Corporation ("**FCIC**") and Risk Management Agency ("**RMA**").

## Parties

1. Plaintiffs are individuals, trusts, partnerships, and legal entities who farm and/or lease land to tenants for farming purposes in the following counties in West Texas: Bailey County, Briscoe County, Castro County, Crosby County, Floyd County, Hale County, Lamb County, Lubbock County, Motley County, Parmer County, and/or Swisher County.

2. The majority of Plaintiffs' farms are located in counties served by the Lubbock Division of the United States District Court for the Northern District of Texas. The remainder of Plaintiffs' farms are located in counties served by the Amarillo Division of the United States District Court for the Northern District of Texas.

3. FCIC is a wholly owned government corporation within the United States Department of Agriculture ("**USDA**").

4. RMA is a subagency of USDA.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 7 U.S.C. § 1508 and 5 U.S.C. §§ 701-06. Venue is proper pursuant to 7 U.S.C. § 1508(j)(2) and 28 U.S.C. § 1391.

**Background Information**

6. The sole issue presented in this case is the proper interpretation of Section 6(k)(2) of the 2020 Rainfall and Vegetation Index Plan Common Policy (the "**RI/VI Policy**").

7. The RI/VI Policy is authorized and governed by the Federal Crop Insurance Act (the "**FCIA**"), 7 U.S.C. §§ 1501-1531, and attendant regulations published in Title 7, Chapter IV of the Code of Federal Regulations.

8. Under the FCIA, federal crop insurance policies are offered through private Approved Insurance Providers ("**AIPs**")—such as Hudson Insurance Company ("**Hudson**")—and reinsured and regulated by FCIC. FCIC, in turn, is operated and managed by RMA. RMA promulgates regulations, crop insurance policies, handbooks, and guidance documents in accordance with the FCIA.

9. Plaintiffs all planted cotton crops in the spring of 2020 (the "**2020 Cotton Crops**").

10. Plaintiffs insured the 2020 Cotton Crops through multiple peril crop insurance policies (the "**2020 Cotton Policies**") purchased from Hudson.

11. After the 2020 Cotton Crops failed due to adverse weather conditions, Plaintiffs planted annual forage crops in the summer of 2020 (the "**2020 Annual Forage Crops**") on the same acreage on which the failed 2020 Cotton Crops had been planted.

12. Plaintiffs insured the 2020 Annual Forage Crops through annual forage crop insurance policies purchased from Hudson (the **"2020 Annual Forage Policies"**).

13. Plaintiffs planted the 2020 Annual Forage Crops and purchased the 2020 Annual Forage Policies because—according to West Texas agricultural experts—planting a summer forage crop after a failed cotton crop is a recognized, recommended, and profitable practice.

14. Plaintiffs also planted the 2020 Annual Forage Crops and purchased the 2020 Annual Forage Policies in reliance on prior guidance from RMA and Hudson that planting annual forage crops after failed spring cotton crops would satisfy Section 6(k)(2) of the RI/VI Policy and allow an insured to receive a full indemnity for both crops.

15. Section 6(k) of the RI/VI Policy provides that:

> Notwithstanding section 6(i)(2)(ii), you may receive a full indemnity for a first insured crop when a second crop, regardless of whether or not the second crop is insured or sustains an insurable loss, if each of the following conditions is met:
>
> (1) It is a practice that is generally recognized by agricultural experts or organic agricultural experts for the area to plant two or more crops for harvest in the same crop year;
>
> (2) The second crop is customarily planted after the first insured crop for harvest on the same acreage in the same crop year in the area;
>
> (3) Additional coverage offered under the authority of the Act is available in the county on the two or more crops that are double cropped; and
>
> (4) You provide records acceptable to us of acreage and production that show you have double cropped acreage in at least two of the last four crop years in which the first insured crop was planted, or that show the applicable acreage was double cropped in at least two of the last four crop years in which the first insured crop was grown on it.

16. Prior guidance from RMA—in the form of Final Agency Determination: FAD-291 ("**FAD-291**") and Final Agency Determination: FAD-301 ("**FAD-301**")—instructed that an insured would be entitled to receive an indemnity for both a first insured crop and second insured annual forage crop so long as both crops satisfied the requirements of Section 6(k)(2).

17. RMA did not invent Section 6(k)(2) out of whole cloth; instead, Section 6(k)(2) of the RI/VI Policy parrots the language of 7 U.S.C. § 1508a(d)(4).

18. Section 1508a(d)(4) provides that:

> A producer may receive full indemnity payments on two or more crops planted for harvest in the same crop year and insured under this subchapter if each of the following conditions are met:
>
> (1) There is an established practice of planting two or more crops for harvest in the same crop year in the area, as determined by [FCIC].
>
> (2) An additional coverage policy or plan of insurance is offered with respect to the agricultural commodities planted on the same acreage for harvest in the same crop year in the area.
>
> (3) The producer has a history of planting two or more crops for harvest in the same crop year or the applicable acreage has historically had two or more crops planted for harvest in the same crop year.
>
> (4) The second or more crops are customarily planted after the first crop for harvest on the same acreage in the same year in the area.

19. On July 31, 2020, after Plaintiffs had planted the 2020 Annual Forage Crops and become bound by the 2020 Annual Forage Policies, RMA issued Informational Memorandum: COM-20-003 (the "**Informational Memorandum**"). Although the Informational Memorandum purported to provide guidance to AIPs regarding the interpretation and application of Section 6(k)(2), it actually represented a new interpretation of Section 6(k)(2).

20. The Informational Memorandum largely restated RMA's previous guidance set forth in FAD-291 and FAD-301. For example, the Informational Memorandum quoted Section 6(k)(2) of the RI/VI policy provisions and stated:

> In order for the insured annual forage crop to meet the double cropping requirement, the remaining conditions must be met including but not limited to the following conditions: 1) it is a practice that is generally recognized by agricultural experts or organic agricultural experts for the area to plant two or more crops for harvest in the same crop year; and 2) the second crop is customarily planted after the first crop for harvest on the same acreage in the same crop year in the area. For example, regionally it is a generally recognized double cropping practice to plant wheat followed by soybeans.

Critically, however, the Informational Memorandum also contained the following statement: "RMA has not identified an instance of double cropping involving two spring seeded crops such as cotton followed by corn for silage."

21. Hudson initially asked RMA to rescind the Information Memorandum because Hudson disagreed with RMA's new interpretation of Section 6(k)(2) set forth therein.

22. After RMA refused to rescind the Informational Memorandum, Hudson was required to defer to RMA's new interpretation of Section 6(k)(2).

23. As a result, Hudson was required to issue adverse determinations denying Plaintiffs' right to receive a full indemnity for both the 2020 Cotton Crops and 2020 Annual Forage Crops under Section 6(k)(2) of the RI/VI Policy (the "**Hudson Adverse Determinations**").

24. Pursuant to the dispute resolution procedures in the RI/VI policy provisions, Plaintiffs filed demands for arbitration with Hudson to challenge the Hudson Adverse Determinations in arbitration.

25. Unsurprisingly, Plaintiffs and Hudson disagreed as to the proper interpretation of Section 6(k)(2) in the arbitration proceeding.

26. As required by Sections 15(a)(3) and 31 of the RI/VI Policy, Plaintiffs and Hudson submitted a joint request for an FCIC interpretation of Section 6(k)(2) (the "**FCIC Interpretation Request**").

27. In the FCIC Interpretation Request, Hudson adopted RMA's interpretation of Section 6(k)(2) and argued that, for an insured to satisfy Section 6(k)(2) and qualify for a double cropping practice for two successive crops, "it must be a customary practice in the area to plant those crops in succession, in the same order, on the same acreage, and for harvest in the same crop year." In addition, without any statutory or regulatory justification, Hudson argued that Section

6(k)(2) requires that the "second crop must customarily be planted at a point in time after the first crop *is harvested*."

28. The interpretation of Section 6(k)(2) proposed by Hudson inserted an "actually harvested" requirement not found in the text of Section 6(k)(2) or 7 U.S.C. § 1508a(d)(4).

29. Because it is not customary in West Texas for a farmer to plant and harvest an annual forage crop after planting *and actually harvesting* a spring cotton crop, Hudson's proposed interpretation of Section 6(k)(2) would necessarily result in Plaintiffs being ineligible to receive a full indemnity for both the 2020 Cotton Crops and 2020 Annual Forage Crops.

30. Plaintiffs proposed interpretation was that to satisfy Section 6(k)(2) an insured need only show that it is customary in West Texas for a farmer to plant the second crop after the first crop for harvest on the same acreage in the same crop year. In other words, Plaintiffs did not incorporate an "actually harvested" requirement into their interpretation because such a requirement is not supported by the plain language of Section 6(k)(2) or § 1508a(d)(4).

31. Plaintiffs' interpretation benefited from the fact that it tracked the plain language of Section 6(k)(2) and 7 U.S.C. § 1508a(d)(4); complied with fundamental grammar rules; and followed accepted cannons of construction.

32. After reviewing the competing interpretations submitted by Hudson and Plaintiffs, RMA issued its official interpretation of Section 6(k)(2) on December 4, 2023 (the "**FCIC Interpretation**").

33. The FCIC Interpretation rejected Plaintiffs' proposed interpretation and purportedly adopted Hudson's proposed interpretation. But while RMA agreed with the outcome of Hudson's proposed interpretation, it reached that outcome using different reasoning than Hudson.

34. The FCIC Interpretation incorporated additional limitations onto Section 6(k)(2) that are not supported by the plain language of Section 6(k)(2). The central premise of the FCIC Interpretation is that:

> The requirement in 6(k)(2) is not contingent upon whether the producer harvests the crop in an actual double cropping scenario but rather whether it is customary in the area to plant the two crops, **both having the capability to reach maturity and be harvested**, on the same acreage in the same crop year.

The operative language of the Agency's interpretation—"both having the capability to reach maturity and be harvested . . . in the same crop year"—appears nowhere in Section 6(k)(2) or § 1508a(d)(4).

35. To support the FCIC Interpretation, RMA incorporated the definition of "double crop" contained in the RI/VI Policy into Section 6(k)(2) despite the fact the term "double crop" is not found in Section 6(k)(2).

36. Although Section 6(k)(2) parrots the language of 7 U.S.C. § 1508(d)(4), the FCIC Interpretation never explains why RMA's interpretation is necessary or justified.

37. The FCIC Interpretation never explains how the Agency has authority to impose additional double insurance limitations not contemplated or intended by Congress. Instead, RMA ignored Section 1508(d)(4) and imposed new double insurance limitations by bureaucratic fiat.

38. Plaintiffs challenged the FCIC Interpretation by filing an appeal with the USDA National Appeals Division ("**NAD**").

39. On June 25, 2024, the NAD administrative judge issued an Appeal Determination that upheld the FCIC Interpretation (the "**Appeal Determination**").

40. Plaintiff appealed the Appeal Determination to the Director of NAD on July 25, 2024.

41. On November 18, 2024, the Director of NAD issued a Director Review Determination that upheld the Appeal Determination (the "**Director Review Determination**").

42. Although the Director Review Determination is the "final agency action" at issue in this case, the core issue to be resolved is whether the FCIC Interpretation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

43. Plaintiffs seek judicial review of the Director Review Determination and the FCIC Interpretation.

44. This Court is empowered to reverse or modify the Director Review Determination and the FCIC Interpretation if they are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

45. Plaintiffs contend the Director Review Determination and FCIC Interpretation should be reversed as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because:

   a. the FCIC Interpretation conflicts with the plain language of 7 U.S.C. § 1508a(d)(4) and Section 6(k)(2) of the RI/VI Policy;

   b. the FCIC Interpretation is an unreasonable construction of 7 U.S.C. § 1508a(d)(4) and Section 6(k)(2) of the RI/VI Policy;

   c. the FCIC Interpretation constitutes improper retroactive rulemaking; and

   d. the FCIC Interpretation is arbitrary, capricious, and an abuse of discretion.

**Request for Judicial Review, Declaratory and Injunctive Relief**

WHEREFORE, pursuant to the standards set forth in the RI/VI Policy, the FCIA, and the Administrative Procedures Act, 5 U.S.C. §§ 701-706, Plaintiffs respectfully request that the Court:

   A. review the Director Review Determination and FCIC Interpretation;

B.	determine and declare that the Director Review Determination and FCIC Interpretation are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

C.	enter judgment reversing the Director Review Determination and FCIC Interpretation;

D.	award Plaintiffs with their attorney's fees, costs and such further relief to the extent permitted by law and as the Court deems just and proper.

DATED this 13th day of November, 2025.

Respectfully submitted,

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*/s/ John Massouh*
John Massouh

Colby Byrd, SNB 33478 *(pro hac vice pending)*
colby.byrd@mcafeetaft.com
Gatlin Squires, SNB 34795 *(pro hac vice pending)*
gatlin.squires@mcafeetaft.com
McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 N Robinson Ave
Oklahoma City, OK 73102
(405) 270-6059; Fax (405) 270-7259

ATTORNEYS FOR PLAINTIFFS